# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CAMPING UNLIMITED FOR THE DEVELOPMENTALLY DISABLED,<br><br>Plaintiff,<br><br>v.<br><br>BROWN & BROWN OF GARDEN CITY, INC., et al.,<br><br>Defendants. | Case No. 21-cv-05495-BLF<br><br>**ORDER DENYING BROWN & BROWN MOTION TO DISMISS; GRANTING MARKEL MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>[Re: ECF Nos. 16, 17] |

Before the Court are two motions to dismiss in this insurance case: one brought by Defendant Brown & Brown of Garden City, Inc. (ECF No. 17, "B&B Mot.") and the other brought by Defendant Markel Insurance Company (ECF No. 16, "Markel Mot."). Both Defendants seek to dismiss the complaint in its entirety, although for different reasons due to the different roles they allegedly played in issuing the insurance policy at issue. Plaintiff Camping Unlimited for the Developmentally Disabled opposes both motions. ECF Nos. 20, 21. For the reasons discussed on the record at the January 20, 2022 hearing and explained below, Brown & Brown's motion to dismiss is DENIED and Markel's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## I.    BACKGROUND

Plaintiff Camping Unlimited for the Developmentally Disabled ("CU") runs summer and year-round programs for thousands of children and adults with learning disabilities. ECF No. 1-1 ("Compl.") ¶ 9. CU's programming "encourages community, recreation, education, fun and adventure for the developmentally disabled and their families." *Id.* In 2019, CU enrolled more than 800 campers in its summer program and another 400 campers in its year-round program. *Id.*

CU's camps took place at Camp Krem, located near Boulder Creek in the Santa Cruz Mountains. *Id.* ¶¶ 9–10. Originally only a tented campsite, Camp Krem grew to include more than 30 structures, including a multipurpose center, commercial kitchen, offices, a music pavilion, gardens, and miles of hiking trails, among other amenities. *Id.* ¶ 10.

In January 2018, CU's administrative director Layla Sharief began looking for a new insurance policy for CU, as the existing policy was set to expire on April 12, 2018. Compl. ¶¶ 11, 15. Sharief made an inquiry with Brown & Brown, which offers insurance brokerage services. *Id.* ¶ 12. Brown & Brown's broker Michael Labadorf contacted Sharief to pitch Brown & Brown's services. *Id.* "Based on some basic information about CU's camp, Labadorf generated a statement of values (SOV) of CU's property," which put the value of the buildings and structures at just over $2.6 million. *Id.* ¶ 13. Labadorf suggested that CU hire an appraiser to ensure the SOV was accurate "because if CU ended up underinsured, it could be subject to a coinsurance penalty on all claims." *Id.* ¶ 14.

As CU considered whether to use Brown & Brown, Labadorf followed up several times with Sharief and touted Brown & Brown's services. He said that Brown & Brown was "the largest independent camp insurance broker in the USA" and offered to send her "a list of hundreds of camp references." *Id.* ¶ 17. To one email, Labadorf attached a six-page company profile describing Brown & Brown's specialization and claiming that its "experience and knowledge in the camping & nonprofit fields is unmatched by virtually any other broker in the country." *Id.* ¶ 18. Labadorf sent Sharief two ghost-written letters to two insurance companies—Philadelphia Insurance Companies, CU's existing insurance provider; and Markel Insurance Company—with instructions to sign and return them so Labadorf could begin to "pit one [company] against the other" to get the best deal for CU. *Id.* ¶ 22. Sharief did so, and CU sought an extension of the renewal date on the existing policy to allow for additional time. *Id.* ¶ 24.

Labadorf eventually recommended a Markel insurance policy to Sharief. *Id.* ¶ 27. Labadorf sent Sharief an application for the policy and told her to fill it out and return it to him. *Id.* Markel issued the policy to CU. *Id.* ¶ 29. The policy had a property limit of approximately $3

million[1] and a business income limit of $750,000.  *Id.* ¶ 30.  Because Labadorf had not submitted an independently appraised replacement-cost value of CU's property, the property portion of the coverage had a 90 percent coinsurance provision.  *Id.*  After the policy issued, on May 10, 2018, Labadorf sent Sharief an email asking her when she planned to send to him such an appraisal.  *Id.* ¶ 32.  Sharief "had already told Labadorf on several occasions that CU could not afford such an appraisal and did not have one."  *Id.*  Over the next few months, Labadorf procured additional insurance coverage for CU, such as directors and officer's coverage and workers compensation coverage.  *Id.* ¶ 33.  In January 2019, Labadorf again asked Sharief if she "g[o]t anywhere with an appraisal so we can get coinsurance waived."  *Id.* ¶ 34.  Sharief again told him it was too expensive and asked about the consequences for the coinsurance provision.  *Id.*  Labadorf informed her that the coinsurance clause would penalize CU in the event of a loss if CU was underinsured.  *Id.*

In April 2019, a different broker from Brown & Brown, Jessica Velsor, contacted Sharief with proposals for renewing the policy.  Compl. ¶ 35.  Velsor informed Sharief again that it was "in [CU's] best interest to hire a professional architect or building contractor to develop a more accurate replacement cost figure and get an appraisal on the building."  *Id.*

In August and September 2020, the CZU Lightning Complex fires devastated the mountains in San Mateo and Santa Cruz counties, burning more than 85,000 acres and claiming more than 7,500 structures.  Compl. ¶ 36.  The CZU complex completely destroyed CU's facilities.  *Id.*  The cost to rebuild CU's facilities was estimated at $10.5 million.  *Id.* ¶ 37.  Markel paid the limit of the policy to CU, which left CU with uninsured losses of at least $6 million.  *Id.* ¶¶ 38–39.  CU has been unable to resume operations.  *Id.*

CU filed this action in state court on June 10, 2021, asserting a single claim for negligence.  *See Camping Unlimited for the Developmentally Disabled v. Brown & Brown of Garden City, Inc. et al.*, No. 21CV01464 (Santa Cruz Cty. Super. Ct., filed June 10, 2021).  Brown & Brown and

---

[1] CU clarified in its opposition to the motions to dismiss that the Complaint erroneously states the policy limit as $2 million.  *Compare* Compl. ¶ 30, *with* ECF No. 21 at 4 n.1.

1  Markel removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441.  ECF No. 1.  Both
2  Defendants moved to dismiss, and the Court held a hearing on the motions on January 20, 2022.
3  ECF Nos. 16, 17, 35.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III. BROWN & BROWN'S MOTION TO DISMISS

Brown & Brown has moved to dismiss the claims asserted against it.  *See* B&B Mot.  Brown & Brown argues that it (1) had no duty to ensure that coverage was adequate or to recommend additional coverage, and (2) did not assume or breach any special duty.  *Id.* at 6–11.  CU contests only the second point, arguing that its complaint sufficiently alleges that Brown & Brown (1) assumed a special duty by holding itself out as an expert in insuring campsites, and (2) breached that duty when it used its own appraisal—which drastically undervalued the property—

4

1   as the foundation of the insurance policy.  ECF No. 21 at 10–17.

2         Ordinarily, an insurance broker has no duty to ensure that the insured has requested

3   adequate coverage or to recommend additional insurance coverage beyond that requested by the

4   insured.  *See Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (1997).  A broker, however, assumes

5   a special duty beyond those typically owed to an insured if one of three exceptions occurs:

> [1] the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . ., [2] there is a request or inquiry by the insured for a particular type or extent of coverage . . ., or [3] the agent assumes an additional duty by either express agreement or holding himself out as having expertise in a given field of insurance being sought by the insured.

10  *Kin Wai Lu v. Mt. Hawley Ins.*, 2011 WL 5104469, at *3 (N.D. Cal. Oct. 26, 2011) (quoting *Dairy*

11  *Am., Inc. v. N.Y. Marine & Gen. Ins. Co.*, 2010 WL 1328740, at *7 (E.D. Cal. Apr. 1, 2010));

12  *Fitzpatrick*, 57 Cal. App. 4th at 927 (expanding duty "when—and only when" one of those

13  exceptions is present).

14        The Court finds that CU has adequately pled that Brown & Brown assumed and breached a

15  special duty based on the third exception above—by "holding [itself] out as having expertise in a

16  given field of insurance being sought by the insured."  *Kin Wai Lu*, 2011 WL 5104469, at *3.  CU

17  alleges that Labadorf contacted its administrative director and "aggressively promoted [Brown &

18  Brown] as a specialist in insurance for camps."  Compl. ¶ 17.  The brochure that Labadorf sent

19  Sharief claimed that Brown & Brown had "experience and knowledge in the camping & nonprofit

20  fields" that was "unmatched by virtually any other broker in the country."  *Id.* ¶ 18.  Labadorf also

21  offered to provide a list of "hundreds of camp references" from camps who "suffered the worst

22  possible losses" but were able to "continue in season without skipping a beat" due to CU's

23  "expertise in camp claims handling and crisis response."  *Id.* ¶¶ 17, 19.  CU alleges that Brown &

24  Brown breached this special duty when it, among other things, failed to ensure that its own

25  replacement-cost estimates for CU's property were sufficient.  *Id.* ¶ 47.  These are sufficient

26  allegations at the pleading stage regarding Brown & Brown holding itself out as an expert in

27  procuring camp insurance, thus taking on and breaching a special duty beyond that of a typical

28  insurance broker.

Brown & Brown argues that these allegations are insufficient for several reasons. Brown & Brown says that even if it held itself out as an expert in camp insurance, CU has not alleged that it held itself out as an expert in appraising properties. Labadorf and Velsor, in fact, disclaimed any such expertise by "repeatedly" telling Sharief that the only way to ensure an accurate property valuation was to obtain a professional appraisal. B&B Mot. at 10. Brown & Brown attaches to its motion what it claims are complete versions of the email chains referenced in the complaint and argues that the chains are incorporated by reference. *See* Regan Decl., ECF No. 17-1, Exs. A–C. CU says the Court should not consider this extrinsic evidence at this stage of the case. ECF No. 21 at 6–8.

The Court finds that Brown & Brown's arguments present fact issues that are not appropriate for resolution on a motion to dismiss. Whether brokers who sell specialized insurance hold themselves out as experts is based on the "totality of the circumstances" considering a number of factors, including "the nature of the parties' interactions," marketing tools such as brochures, and "the degree of control the agent asserted in the relationship," among other factors. *Murray v. UPS Capital Ins. Agency, Inc.*, 54 Cal. App. 5th 628, 648 (2020) (citing *Kurtz, Richards, Wilson & Co. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249 (1993), and *Williams v. Hilb, Rogal & Hobbs Ins. Servs. of Cal.*, 177 Cal. App. 4th 624 (2009)). The Court cannot conclude that these factors were not present as a matter of law.

The Court declines to find that the purported email chains offered by Brown & Brown are incorporated into the Complaint by reference. The incorporation by reference doctrine "treats certain documents as though they are part of the [C]omplaint itself." *Advanced Risk Managers, LLC v. Equinox Mgmt. Grp.*, 2019 WL 6716292, at *3 (N.D. Cal. Dec. 10, 2019). It exists to prevent "plaintiffs from selecting only portion of documents that support their claims, while omitting portions that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018). But the Ninth Circuit has cautioned against overuse of the doctrine, which could allow defendants "to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* at 1002. In particular, courts must be wary of drawing inferences from documents purportedly incorporated by reference because such assumptions can

6

"only serve to dispute facts stated in the well-pleaded complaint." *Id.* Here, Brown & Brown urges the Court to consider not only the purportedly full email chains, but also draw inferences about the meaning and effect of those emails on CU officials. This delves too far past the allegations in CU's complaint into credibility determinations that should not be made on a motion to dismiss. To be sure, those email chains may present problems for CU at a later stage of the case, but on a motion to dismiss it would not be proper for the Court to consider them.[2] CU has alleged that those disclaimers were made in the context of trying to avoid the coverage's coinsurance clause, not obtaining full and adequate coverage. Compl. ¶ 34. That suffices for this stage of the case.

Accordingly, Brown & Brown's motion to dismiss is DENIED.

## IV. MARKEL INSURANCE COMPANY'S MOTION TO DISMISS

Markel has also moved to dismiss the claims against it, arguing that (1) a negligence claim cannot generally be asserted against an insurer, and (2) it cannot be liable as Brown & Brown's principal for Brown & Brown's alleged negligence because Brown & Brown was acting as CU's agent when it was procuring insurance. Markel Mot. at 7–12. CU argues that it has adequately alleged a dual agency relationship in its Complaint. ECF No. 22 at 6–13. The Court agrees with Markel.

Under California law, where "an insurance broker is an agent for several [insurance] companies and selects the company with which to place the insurance or insures with one of them according to directions, the insurance agent is the agent of the insured." *Eddy v. Sharp*, 199 Cal.

---

[2] Judge Chen's decision in *Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178 (N.D. Cal. 2020), in which he granted a motion to dismiss despite plaintiff's argument about the existence of a special duty, is distinguishable. In *Sheahan*, the defendant provided specific disclaimers about the purported special duty in the written statement of value and insurance policy, both of which were attached as exhibits to the operative complaint. That is not the case here, where the alleged disclaimers appeared in disputed email threads not attached to the complaint and the parties disagree about meaning of those disclaimers in context.

7

App. 3d 858, 865 (1988); *see also Mercury Ins. Co. v. Pearson*, 169 Cal. App. 4th 1064, 1073 (2008) (any negligence committed by broker in procuring insurance was committed in capacity as agent of insured where broker selected insurance policy from among those offered by several companies). That is exactly what CU alleged happened here. CU alleges that Brown & Brown is "an appointed broker of as many as 140 insurance companies and can do business in California on behalf of any and all of those companies." Compl. ¶ 4. CU alleges that Brown & Brown made inquiries with at least two insurance companies—Markel and Philadelphia Insurance Companies—before recommending Markel to CU. *Id.* ¶¶ 16 (Labadorf "looked into several options for CU"), 22 (Labadorf asked Sharief to sign two letters to Philadelphia Insurance Company and Markel so he could "pit one [company] against the other" to get the best deal for CU), 27 (Labadorf recommended Markel quote to Sharief). In seeking quotes from more than one insurance company and recommending Markel, Brown & Brown was acting as CU's agent, not Markel's. Markel thus cannot be held liable as Brown & Brown's principal for any actions Brown & Brown took. *Eddy*, 199 Cal. App. 3d at 864; *Pearson*, 169 Cal. App. 4th at 1073.

Because Markel cited *Eddy* and *Pearson* for the first time in reply, the Court requested and received supplemental briefs from both CU and Markel on the applicability of the two cases. *See* ECF Nos. 36 (CU supplemental brief), 38 (Markel supplemental brief). Having considered those briefs, the Court finds CU's efforts to distinguish *Eddy* and *Pearson* unpersuasive. CU primarily relies on *Loehr v. Great Republic Ins. Co.*, 226 Cal. App. 3d 727, 734 (1990), but that case is distinguishable. In *Loehr*, the plaintiff asserted a claim for breach of an insurance contract after the insurance company denied a claim. The Court of Appeal reversed the trial court's determination that the independent insurance agent could not have been the insurer's agent at the time he arranged for the policy to be issued because he was an "independent" insurance agent licensed to transact insurance for several different carriers. *Id.* at 732–33. Importantly, there was evidence in the record that the insurance broker himself executed the policy for the insurance company, and no evidence that he reached out to other insurance companies to find other coverage options that may have been more advantageous to the insured. *Id.* at 732–33.

That contrasts with what CU has alleged happened here. Under *Loehr*, Labadorf may have

been capable under California law of acting as both an agent for Markel and for CU under certain circumstances. But unlike in *Loehr*, CU has alleged that Labadorf took actions that would be outside of his role as a limited agent for Markel to issue insurance policies. Labadorf could not have been acting as an agent for Markel when he sought to "pit one [insurance company] against the other" to get the best insurance deal for CU. Compl. ¶ 22. Nor did Labadorf act as Markel's agent by binding coverage and issuing a policy. CU has alleged that it was a Markel underwriter that bound coverage and issued the policy, not Labadorf himself. *See id.* ¶ 28 (Labadorf forwarding email to Sharief indicating that a Markel underwriter bound coverage and that the policy would issue soon). Thus, while the general principles in *Loehr* are sound, CU's allegations about Labadorf's actions and how the policy was issued compel a different result than the one reached in *Loehr*.[3]

The Court finds that leave to amend would be futile. Having already alleged that Brown & Brown sought insurance quotes from multiple companies and that a Markel underwriter bound coverage and issued the policy, CU cannot now reverse course and allege that Brown & Brown was in some kind of exclusive agency relationship with Markel or that Brown & Brown itself issued the policy. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading.").

Accordingly, Markel's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND. Markel is DISMISSED from this case.

V.  **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Brown & Brown's motion to dismiss is DENIED and Defendant Markel Insurance Company's motion to dismiss is

---

[3] To the extent that CU is alleging a direct claim against Markel for using a faulty appraisal and not ensuring adequate coverage, Markel is correct that this violates the *Fitzpatrick* rule that insurers cannot be held liable for failing to ensure adequate coverage absent a special duty. CU has not alleged any facts establishing that Markel itself took on such a special duty.

1    GRANTED WITHOUT LEAVE TO AMEND.  Markel is DISMISSED from this case.  Brown &
2    Brown SHALL answer the complaint no later than 21 days from the date of this Order.  The case
3    schedule remains in effect.  *See* ECF Nos. 30, 32.

5    Dated:  February 9, 2022

     _____
     BETH LABSON FREEMAN
     United States District Judge